UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY FULLER,

    Plaintiff,

v.

Case No. 1:19-CV-482

JPMORGAN CHASE BANK, N.A., JAMIE
DIMON CHAIRMAN & CEO JPMORGAN
CHASE BANK, N.A., SCHNEIDERMAN &
SHERMAN, P.C., MARSHA SANDERSON,
and TROTT LAW,

HON. GORDON J. QUIST

    Defendants.
_____/

## **OPINION**

Plaintiff, Larry Fuller, proceeding pro se, filed a sixteen-count Complaint against Defendants, JPMorgan Chase Bank, N.A. (Chase); Jamie Dimon, Chairman and CEO of Chase; Schneiderman & Sherman, P.C.; Marsha Sanderson; and Trott Law, in the Kalamazoo County Circuit Court on or about May 17, 2019, alleging numerous claims based on federal and state law. On June 17, 2019, Defendants JP Morgan and Dimon removed the case to this Court, alleging the existence of both federal question and diversity jurisdiction. (ECF No. 1.) All of Fuller's claims arise out of Chase's nonjudicial foreclosure of a mortgage on Fuller's real property. On August 7, 2019, the Court dismissed Count 16 of the complaint—which alleged that Defendants violated the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362—for lack of jurisdiction. (ECF No. 28.)

JP Morgan, Schneiderman & Sherman, and Trott Law have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In addition, Defendant Dimon has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack

of personal jurisdiction. Fuller has failed to respond to Defendants' motions with the time provided under Western District of Michigan Local Civil Rule 7.2(c).

For the reasons set forth below, the Court will grant Defendants' motions and dismiss the Complaint with prejudice. In addition, the Court will deny Fuller's motion for a temporary restraining order.

## I. BACKGROUND

The following facts are based on the allegations in Fuller's Complaint, the documents attached to the Complaint, matters of public record, and exhibits attached to Defendants' motions and briefs that are referred to in the Complaint.[1]

On March 19, 2003, Fuller obtained a mortgage loan from Bank One, N.A. in the amount of $303,500, to purchase real property known as 530 West South Street, Kalamazoo, Michigan 49007 (Property). (ECF No. 1-1 at PageID.16; ECF No. 21-1 at PageID.395.) Fuller granted a mortgage (Mortgage) on the Property to Mortgage Electronic Registration Systems, Inc. (MERS) to secure repayment of the loan. (ECF No. 21-1 at PageID.395.) On or about April 3, 2012, MERS assigned the Mortgage to Chase, and the assignment was recorded in the Kalamazoo County Register of Deeds as instrument number 2012-010402. (*Id.* at PageID.411.)

At some point, Fuller defaulted on his loan. On October 3, 2015, Fuller entered into a Loan Modification Agreement (LMA) with Chase, which provided that the new principal balance for the loan was $395,942.91. (*Id.* at PageID.413–14.) The LMA was recorded with the Kalamazoo County Register of Deeds on December 19, 2013, as instrument number 2013-049798. Eventually,

---

[1] Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Rule 12(b)(6), courts may consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Fuller defaulted on his obligations under the loan and the LMA, and Chase, through its counsel, Schneiderman & Sherman, P.C., initiated a foreclosure by advertisement. (*Id.* at 21-1 at PageID.420.) The Property was initially noticed for a July 12, 2018, sheriff's sale, and notice of the sale was published for four consecutive weeks in *The Climax Crescent*, beginning on June 8, 2018. (*Id.* at PageID.422.) The sale was postponed but was ultimately held on October 18, 2018. (ECF *Id.* at PageID.421.) Chase purchased the Property at the sheriff's sale. (*Id.* at PageID.420–21.) Fuller's right of redemption expired on April 19, 2019, pursuant to M.C.L. § 600.3238.

Prior to the foreclosure, Fuller filed several Chapter 13 bankruptcy petitions. He filed the first on May 12, 2017. That case was dismissed on June 16, 2017. (*Id.* at PageID.433.) Fuller filed his second Chapter 13 petition on June 27, 2017. That case was dismissed on November 14, 2017. (*Id.* at PageID.454.) Fuller filed his third Chapter 13 petition on January 26, 2018, which was dismissed on May 4, 2018. (*Id.* at PageID.479.) Fuller filed his fourth Chapter 13 petition on March 18, 2019. The bankruptcy court dismissed that case on June 5, 2019, and barred Fuller from filing another bankruptcy case until November 26, 2020. (*Id.* at PageID.98–99.)

Fuller filed the instant case in Kalamazoo County Circuit Court on or about May 17, 2019, approximately 28 days after the redemption period expired. Fuller alleges that he sought a loan modification from Chase but that Chase denied his request for loss mitigation assistance and, instead, initiated the foreclosure sale. (ECF No. 1-1 at PageID.21.) Elsewhere, Fuller alleges that although he is "in active loan modification review," Chase wrongfully proceeded with the foreclosure. (*Id.* at PageID.18, 21–22.)

## II. MOTION STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

**A.    Trott Law**

Trott law argues in its motion that it is entitled to dismissal because it had nothing to do with the foreclosure. Trott Law states that its first encounter with the incidents and transactions alleged in the Complaint was when it received a copy of the Complaint. Trott Law notes that Fuller alleges no fact suggesting that Trott Law was involved in the foreclosure in any capacity or respect or engaged in any wrongdoing. The Court agrees. Fuller's allegations, as well as the publicly available documents pertaining to the foreclosure, show that Trott Law was not involved at all in the foreclosure. The pertinent documents show that Schneiderman & Sherman, not Trott Law,

4

handled the foreclosure sale for Chase. Accordingly, Trott Law is entitled to dismissal as Fuller alleges no basis to impose liability on this Defendant. *Cf. Gilmore v. Corrs. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

**B.    Defendant Sanderson**

Although Defendant Sanderson has not moved for dismissal, the Court's review of the Complaint shows that Fuller alleges no fact against her that could support a claim under any of the theories that Fuller alleges. Fuller's only allegation regarding Sanderson is that she is employed by Schneiderman & Sanderson and that, in an October 2, 2018 telephone call, she told Fuller that Chase and Schneiderman & Sherman were not auctioning his home and "the on-line advertisement 'Live Auction: Oct. 04, 10:00am [sic]' at auction.com is not correct." (ECF No. 1-1 at PageID.20.) Such statement was true, as no auction or sale occurred on October 4, 2018. Moreover, Fuller fails to allege how Sanderson's alleged statement amounts to wrongful conduct.

**C.    Defendant Dimon**

Defendant Dimon moves for dismissal because the Court lacks personal jurisdiction over him. Dimon argues that Fuller fails to allege any facts showing that Dimon has sufficient contacts with the State of Michigan to render the exercise of jurisdiction by this Court proper. In particular, Dimon argues that Fuller fails to show that Dimon, a New York resident, has any personal contacts with the State of Michigan or was personally involved with Fuller's loan or the foreclosure. (ECF No. 20 at PageID.246.)

As noted, Fuller has failed to respond to Dimon's motion within the prescribed time. Some courts have noted that, where, as here, a nonmoving party fails to timely respond to a dispositive motion, such failure could be considered a failure to prosecute, allowing for dismissal on that basis

alone. *See e.g.*, *Cruz v. Bank of Am.*, No. 12-11148, 2012 WL 2849419, at *1 (E.D. Mich. July 11, 2012). Nonetheless, the Court has reviewed Dimon's motion and concludes that he has properly supported his motion. That is, Dimon has shown that this Court has neither general jurisdiction nor limited jurisdiction over Dimon pursuant to Michigan's long-arm statutes. *See* M.C.L. §§ 600.701, 600.705. Moreover, Fuller fails to show that Dimon has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 C. St. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)). In short, Fuller has failed to come forth with facts showing that this Court has personal jurisdiction over Dimon. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ("[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.").

Accordingly, Dimon will be dismissed for lack of personal jurisdiction.

**D.     Chase and Schneiderman & Sherman**

    **1.     Fuller's Foreclosure-Related Claims (Counts 1, 2, and 4) Provide No Basis to Invalidate the Sheriff's Sale**

In Michigan, the rights of a mortgagor and mortgagee after foreclosure are controlled by statute. *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 52, 503 N.W.2d 639, 642 (1993). The foreclosure statute provides that once the redemption period has expired, all of the mortgagor's rights in the property are extinguished by operation of law. M.C.L. § 600.3236; *see Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187–88, 4 N.W.2d 514, 517 (1942). The six-month statutory redemption period under M.C.L. § 600.3240 may not be extended absent a clear showing of fraud or irregularity. *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (per curiam) (citing *Schulthies v. Barron*, 16 Mich. App. 246,

6

247–48, 167 N.W.2d 784, 785 (1969) (per curiam)). The fraud or irregularity must be present in the foreclosure process itself. *Williams v. Pledged Prop. II, LLC*, No. 12-1056, 2012 WL 6200270, at *2 (6th Cir. Dec. 13, 2012). Thus, to upset the foreclosure once the redemption period has expired "would require a strong case of fraud or irregularity, or some peculiar exigency." *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997) (citing *Detroit Trust Co. v. Aqozzino*, 280 Mich. 402, 405–06, 273 N.W. 747, 748 (1937) and *Calaveras Timber Co. v. Mich. Trust Co.*, 278 Mich. 445, 450, 270 N.W. 743, 745 (1936)).

Although Fuller alleges various fraud claims in his Complaint, he alleges no fraud or irregularity in connection with the foreclosure. Fuller alleges no fact indicating that Chase and/or Schneiderman & Sherman engaged in any act that prevented Fuller from stopping the sheriff's sale or curing the default.

Moreover, Counts 1, 2, and 4 hinge entirely upon Fuller's assertion that Chase failed to comply with M.C.L. § 600.3205, which precluded a foreclosure if the lender had not, under certain circumstances, determined whether the mortgagor qualified for a loan modification. Fuller's reliance on this statutory provision fails for the simple reason that the Michigan legislature repealed M.C.L. §§ 600.3205a to 600.3205d effective June 30, 2013, and repealed M.C.L. § 600.3205 effective June 19, 2014—long before Chase foreclosed the Mortgage. *See Mandingo v. PNC Bank N.A.*, No. 2:15-cv-12079, 2017 WL 914026, at *3 (E.D. Mich. Mar. 8, 2017) ("As an initial observation, the Court notes that the Sheriff's Deed contains no reference to Mich. Comp. Laws. § 600.3205, which was repealed nearly one year before PNC published the deed. . . . Thus [the plaintiff's] claim related to Mich. Comp. Laws § 600.3205 fails as a matter of law."); *Lock v. Bank of Am.*, No. 14-13223, 2015 WL 1637493, at *4 (E.D. Mich. Apr. 13, 2015) ("In the matter at hand, Defendant's foreclosure on Plaintiff's home took place on July 8, 2014, over a year after the

effective repeal date of MCL 600.3205c and several weeks after the repeal date of MCL 600.3205. Therefore, Plaintiff's Counts I and II fail as a matter of law.").

   2.  **Fuller's Breach of Contract/Implied Duty of Good Faith and Fair Dealing Claim Fails**

In Count 5, Fuller alleges that "Defendants"—although he does not say which ones—breached the implied duty of good faith and fair dealing in a contractual relationship. In particular, he alleges that "Defendants had the discretion to modify Plaintiffs' [sic] loan in accordance with HAMP and/or other loss mitigation programs." (ECF No. 1-1 at PageID.28.)

Initially, the Court notes that while Fuller identifies this claim as one for breach of contract, he fails to cite any provision of the Mortgage or the loan documents that obligated Chase to modify Fuller's loan. Having discretion to do something does not, alone, amount to a contractual obligation. *See Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 881 (E.D. Ky. 2015) ("Because the mortgaged [sic] contained no loan modification provisions, BANA could not have breached the mortgage by failing to evaluate the Bennetts' [sic] for a loan modification."). Fuller is thus left with his allegation that Chase breached the implied covenant of good faith and fair dealing. But this claim fails as well, as Michigan law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself. *See Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006). Because there was no breach of contract, there likewise was no breach of the implied covenant of good faith and fair dealing.

   3.  **Fuller's Claim for Accounting Fails**

In Count 6, Fuller alleges that because his loan was pooled with other loans, Chase must account to Fuller for any and all payments that Fuller made to provide a basis for the amount claimed to be due and owing in order to avoid foreclosure. This claim fails because an accounting

8

"is not proper where either the parties' contractual agreement or discovery is sufficient to determine the amounts at issue." *Lawson v. Bank of Am., N.A.*, No. 12-cv-14326, 2014 WL 4374379, at *11 (E.D. Mich. Sept. 4, 2014). Here, an accounting is not proper because the amount owing on the loan can be determined based on loan documents. Fuller offers nothing other than conclusory allegations that Chase miscalculated the amount Fuller owed to avoid foreclosure.

### 4. Fuller's Fraud Claims Fail

In Counts 7, 8, and 13, Fuller alleges claims for intentional fraud, constructive fraud, and fraud. The Court considers Count 13 duplicative of Count 7 but will analyze all three claims together. The premise of Fuller's fraud claims is that Defendants made misrepresentations to him in order to trick him into foreclosure in order to obtain a windfall. Fuller alleges that the misrepresentations concerned his payments

In order to state a claim for fraud, a plaintiff must allege that: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 26–27, 585 N.W.2d 33, 36 (1988). Under Michigan law, a claim for constructive fraud is actual fraud without the element of intent. *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012).

Defendants argue that, at the very least, Fuller's fraud claims are deficient because they fail to comply with Federal Rule of Civil Procedure 9(b)'a particularity requirement. Pursuant to Rule 9(b), a party alleging fraud must do so with "particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit interprets Rule 9(b) "liberally," requiring a plaintiff to "allege the time, place, and content of the alleged

misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). In other words, a party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana*, 547 F.3d 564, 569–70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). The particularity requirement serves "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988).

In large part, the fraud claims fail to comply with Rule 9(b) because they are alleged in generalities, referring to "representations" without identifying their content, when they were made, and the person who made them. The misrepresentations concern the status of Fuller's loan payments and the status of Fuller's loan; the foreclosure process and Fuller's rights; and Defendants' promise to modify Fuller's loan. (ECF No. 1-1 at PageID.29–30, 38.) Although Fuller fails to provide details regarding the alleged misrepresentations, his fraud claims would fail even if he had complied with Rule 9(b).

First, the fraud claims are barred by Michigan's statute of frauds to the extent that Fuller alleges Chase promised to provide a loan modification. With regard to claims against financial institutions, Michigan's statute of frauds provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

M.C.L. § 566.132(2). This provision applies to actions against financial institutions based upon a promise to modify a loan and is "'unambiguous.'" *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72. Thus, Fuller's allegation that a representative of Chase told him that he would receive a loan modification if he skipped his monthly mortgage payments is subject to dismissal.

As for the alleged misrepresentations regarding the status of the loan and Fuller's loan payments, it appears that Fuller relies on his allegation that Chase told Step Forward of Michigan that Fuller owed nearly $50,000 to bring his mortgage current, when his October 1, 2016, statement said that he owed $22,969.86. (*Id.* at PageID.21, 46.) Fuller alleges that this representation was material and was "made, among other reasons, in order to induce Plaintiffs [sic] to fall into default, such that Defendants could foreclose and obtain a windfall profit." (*Id.* at PageID.30.) Fuller further alleges that Chase made the representation to Step Forward to preclude it from assisting Fuller in bringing the Mortgage current because Step Forward does not assist borrowers if the balance is over $30,000. (*Id.* at PageID.21.) Such representation does not support a fraud claim for several reasons. First, by his own admission, Fuller was already in default, so he could not have changed his position in reliance on the alleged misrepresentation. Moreover, Fuller fails to allege that he suffered damage as a result of the alleged misrepresentation. That is, he does not allege that

11

he had no other means of applying for loss mitigation assistance without help from Step Forward, nor does he allege facts showing that the outcome would have changed had he received assistance from Step Forward. Moreover, Fuller alleges that Chase in fact reviewed him for loss mitigation but "stated on October 15, 2018 [that] they would not modify [his] mortgage because they could not 'improve [his] situation by 10%.'" (*Id.*)

Finally, to the extent Fuller relies on the allegation that Chase misrepresented that the Property was not listed on the website auction.com, his claim fails for several reasons. First, Fuller fails to plead facts showing that Chase had any connection with auction.com or authorized it to list the Property for sale. Second, Fuller fails to allege any fact showing that Chase's alleged statement that the Property would not be sold on October 4, 2018, was false, as the sheriff's sale was in fact held on October 18, 2018. Finally, Fuller cannot show how the alleged misrepresentation caused him damage. That is, Fuller alleges no fact indicating that the alleged publication of the sale on auction.com caused him injury or precluded him from paying the full balance due on the loan.

### 5. Fuller's Michigan Regulation of Collection Practices Act Claim Fails

In Count 5, Fuller alleges that Defendants violated Michigan's Regulation of Collection Practices Act (MRCPA) in various ways. Rather than alleging facts, Fuller parrots various prohibited acts set forth in Section 2 of the MRCPA, M.C.L. § 445.252. Fuller alleges no fact indicating how Defendants violated MRCPA. Such "vague and conclusory allegations" are insufficient to state a claim that a defendant violated the MRCPA. *Griffin v. JPMorgan Chase Bank, N.A.*, No. 2:13-cv-10002, 2013 WL 6587870, at *5 (E.D. Mich. Dec. 16, 2013). Moreover, to the extent Fuller relies on loan modification discussions or communications about foreclosure to support his claim, his claim must fail because such communications do not fall within the scope of the MRCPA. *See Edgerton v. Nationstar Mortg., LLC*, No. 18-12020, 2018 WL 7680610, at *10 (E.D.

Mich. Dec. 31, 2018), *Rep. and Recommendation adopted*, 2019 WL 1011108 (E.D. Mich. Mar. 4, 2019).

> 6. **Fuller's Claim for Violations of State Law Prohibiting Unfair and Deceptive Consumer Practices with Respect to Loan Servicing Fails**

In Count 11, Fuller alleges that Defendants violated the Michigan Consumer Mortgage Protection Act, M.C.L. § 445.1634. This claim fails because "the Act does not provide a private cause of action." *Dickinson v. Countrywide Home Loans, Inc.*, No. 1:10-CV-668, 2012 WL 163883, at *5 (W.D. Mich. Jan. 19, 2012) (internal quotation marks omitted); *Wiggins v. Nationstar Mortg. LLC*, No. 14-cv-12680, 2015 WL 4967137, at *6 n.2 (E.D. Mich. Aug. 20, 2015) (noting that the Consumer Mortgage Protection Act provides no private cause of action, but "only for enforcement by the commissioner [of insurance and financial services], the attorney general or a county prosecutor" (citations omitted)).

> 7. **Fuller's Promissory Estoppel Claim Fails**

In Count 12, Fuller alleges a claim of promissory estoppel. A claim of promissory estoppel is an equitable remedy and requires that there be "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3) which in fact produced reliance or forbearance . . . , and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 233 Mich. App. 685, 692, 593 N.W. 2d 215, 219 (1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008) (citing *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993) (per curiam)).

In support of his claim, Fuller alleges that Chase "made a clear and definite promise, of a loan modification," (ECF No. 1-1 at PageID.37), based on Chase's August 2016 request that Fuller

13

not make his monthly payments so that he could qualify for a loan modification. (*Id.* at PageID.36.) Fuller's claim fails because the alleged request does not amount to a definite and clear promise to make a loan modification. At best, it was an offer to review Fuller for a loan modification—which Fuller alleges Chase did. (*Id.* at PageID.21.) Fuller also fails to show how he relied to his detriment on Chase's alleged promise. *See Aero Taxi-Rockford v. Gen. Motors Corp.*, No. 259565, 2006 WL 1479915, at *9 (Mich. Ct. App. May 30, 2006) (per curiam) (noting that "detrimental reliance is an element of . . . promissory estoppel"). Because Fuller was already in default, his position did not change when he elected not to make his monthly payments.

Finally, to the extent Fuller relies on an alleged oral promise to modify his loan as the basis for his promissory estoppel claim, such claim is barred by Michigan's statute of frauds. *See Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 753 (6th Cir. 2012); *Blackward Props., LLC v. Bank of Am.*, 476 F. App'x 639, 641–42 (6th Cir. 2012).

### 8. Fuller's Intentional Infliction of Emotional Distress Claim Fails

In Count 14, Fuller alleges a claim of intentional infliction of emotional distress, based on Chase's conduct in foreclosing the Mortgage. The elements of an intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004). "The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Id.* at 577, 686 N.W.2d at 276-77 (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999). A defendant may not be held liable for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *See Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675, 689 (2003).

Fuller's claim fails because his allegations fail to show extreme or outrageous conduct by Chase or any other Defendant. Instead, Chase and the other Defendants engaged in conduct that is common when a lender attempts to work out, and eventually forecloses on, a delinquent mortgage loan. Moreover, "in Michigan, the extreme and outrageous standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts with him in various ways and foreclosed on his property." *Dahl v. First Franklin Loan Servs.*, No. 13-13599, 2014 WL 6686769, at *8 (E.D. Mich. Nov. 26, 2014) (internal quotation marks and brackets omitted). Such is the case here.

### 9. Fuller's Claims of Civil Conspiracy and Vicarious Liability Fail

Count 3 alleges a claim for civil conspiracy. Fuller alleges, in conclusory fashion, that:

> Defendants have illegally, maliciously, and/or wrongfully conspired with one another with the intent to breach the Mortgage and/or the Note and/or to commit the torts of fraud and/or constructive fraud, and/or have further conspired to violate the Michigan and Federal Fair Debt Collection Practices Act and/or the various other torts alleged within the Counts contained within this Complaint, for the improper purpose of forcing Plaintiffs [sic] into foreclosure as soon as possible, such that they can effectuate a bailout and/or cash in on the ABS or a mortgage insurance policy, a portion of which would be shared in the form of a foreclosure servicing bonus with Chase.

(ECF No. 1-1 at PageID.26.) This claim fails because, for the reasons set forth above, Fuller's breach of contract and fraud claims are without merit. "'[A] claim for civil conspiracy may not exist in the air; it is necessary to prove a separate, actionable tort.'" *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 631, 403 N.W.2d 830, 836 (1986)). Moreover, Fuller completely fails to allege any fact suggesting that Defendants engaged in concerted action to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.*

In Count 10, Fuller alleges a claim for vicarious liability, stating that "Jamie Dimon Chairman & CEO, JPMorgan Chase Bank, N.A. is vicariously liable for the actions of the

employees." (ECF No. 1-1 at PageID.34.) However, "vicarious liability is not an independent cause of action. Rather, vicarious liability is the theory utilized to impose a cause of action of negligence against an employer for the negligent acts of its employees." *AeroFund Fin., Inc. v. Sexton Landscape, Inc.*, No. 2:16-cv-13730, 2018 WL 6809185, at *4 (E.D. Mich. Sept. 29, 2018) (internal quotation marks omitted). Fuller has not alleged a claim of negligence against Chase. Accordingly, the principal of vicarious liability has no application in this case.

**10. Fuller's Claim for Temporary and Preliminary Injunctive Relief Fails**

In Count 15, Fuller alleges a claim for preliminary and injunctive relief. However, injunctive relief is a remedy, not a cause of action. *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016). Regardless, such relief is appropriate only where the circumstances demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Injunctive relief is not appropriate in this case because Fuller has shown no likelihood of success. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) (noting that "a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed"). Because all of Fuller's claims fail as a matter of law, there is no basis for issuance of injunctive relief.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motions to dismiss and dismiss Fuller's Complaint with prejudice. In addition, Fuller's motion for a temporary restraining order will be denied.

An Order consistent with this Opinion will be entered.

Dated: October 30, 2019   /s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE